FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 09, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

BRANDILYN W.,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

No. 4:17-CV-05143-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

      Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 9 & 10. Plaintiff brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied her application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C § 401-434. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## I.    JURISDICTION

Plaintiff filed her application for Disability Insurance Benefits on November 13, 2013. AR 135. Her alleged onset date is August 30, 1995. *Id.* Plaintiff's date last insured was on December 1, 1998. AR 64, 69, 76, 197. Plaintiff's applications were initially denied on February 28, 2014, and on reconsideration on May 29, 2014. AR 66, 73.

A hearing with Administrative Law Judge ("ALJ"), Ilene Sloan, occurred on March 7, 2016. AR 33-59. On April 26, 2016 the ALJ issued a decision finding Plaintiff ineligible for disability benefits. AR 17-32. The Appeals Council denied Plaintiff's request for review on July 14, 2017, AR 1-4, making the ALJ's ruling the "final decision" of the Commissioner.

Plaintiff timely filed the present action challenging the denial of benefits, on September 13, 2017. ECF No. 1. Accordingly, Plaintiff's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

## II.    SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be

under a disability only if the claimant's impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsburry v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 & 416.908-09. If the claimant does not have a severe impairment, or combination of

impairments, the disability claim is denied, and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the

national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.    STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational

interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV.  STATEMENT OF FACTS

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here.  Plaintiff was 23 years old at the alleged date of onset. AR 61, 68. She has a sixth grade education. AR 60, 67. Plaintiff is able to communicate in English. AR 33-59. Plaintiff has a history of methamphetamine use. AR 27, 55-58. Plaintiff's past work includes cashier, customer service clerk, inventory auditor, construction laborer, and night auditor. AR 155.

## V.  THE ALJ'S FINDINGS

The ALJ determined that Plaintiff was not under disability within the meaning of the Act from August 30, 1995, through December 31, 1998. AR 28.

**At step one**, the ALJ found that Plaintiff last met the Social Security Act's insured status requirements on December 31, 1998. AR 22. The ALJ also found that through December 31, 1998, Plaintiff had engaged in substantial gainful activity from August 1, 1996 through November 1996, and again from October 1998 through her date last insured (citing 20 § C.F.R. 404.1520 and 404.1571 *et seq.*). *Id*.

At **step two**, the ALJ found that through the date last insured, Plaintiff had the following medically determinable impairments: asthma, malocclusion of the jaw (TMJ), and cervical dysplasia in situ (citing 20 C.F.R. § 404.1521 et seq.). AR 23. However, the ALJ found that during that same time period, Plaintiff did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months, and therefore, Plaintiff did not have a severe impairment or combination of impairments (citing 20 C.F.R. § 404.1521 *et seq.*). AR 25.

The ALJ found Plaintiff was not under disability, as defined in the Social Security Act, at any time from August 30, 1995, the alleged onset date, through December 31, 1998, the last date insured (citing 20 C.F.R. 404.1520 (c)). AR 28.

## VI.    ISSUES FOR REVIEW

Plaintiff argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, she argues the ALJ erred

by: (1) rejecting Plaintiff's subjective complaints; (2) improperly rejecting the opinion of Plaintiff's medical provider; (3) improperly rejecting Plaintiff's severe impairments at step two; (4) finding that Plaintiff engaged in substantial gainful activity from October 1998, through December 1999; (5) finding that Plaintiff failed to meet or equal a Listing at step three; and (6) failing to conduct an analysis at steps four and five.

## VII.   DISCUSSION

### A. The ALJ Properly Discounted Plaintiff's Credibility.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of [her] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id*.

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and

other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284. When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999). Here, the ALJ found that the medically determinable impairments could reasonably be expected to produce the symptoms Plaintiff alleges; however, the ALJ determined that Plaintiff's statements of intensity, persistence, and limiting effects of the symptoms were not entirely credible. AR 24. The ALJ provided multiple clear and convincing reasons for discrediting Plaintiff's subjective complaint testimony. AR 24-28.

Plaintiff argues that the ALJ failed to properly credit her subjective complaint testimony regarding her allegations of pain. Plaintiff only contests a few of the many reasons the ALJ provided for discounting her credibility. Plaintiff provides only four citations to demonstrate error on the part of the ALJ (AR 42, 46-47, 52-54) and all but one are derived from Plaintiff's own testimony at the ALJ hearing. ECF No. 9 at 16. However, Plaintiff fails to note that the majority of the record during the relevant time frame is devoid of treatment and diagnosis for her alleged severe impairments. A claimant's statements may be less credible when treatment is inconsistent with the level of complaints or a claimant is not following

treatment prescribed without good reason. *Molina*, 674 F.3d at 1114. "Unexplained, or inadequately explained, failure to seek treatment . . . can cast doubt on the sincerity of [a] claimant's [] testimony." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d at 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld").

In addition, Plaintiff does not contest the many other valid reasons the ALJ provided for discounting her subjective complaint testimony. First, as noted by the ALJ multiple times, no medical professional has opined that Plaintiff is unable to perform basic work activities. AR 23-28. An ALJ may discount a claimant's subjective symptom testimony that is contradicted by medical evidence. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). Inconsistency between a claimant's allegations and relevant medical evidence is a legally sufficient reason to reject a claimant's subjective testimony. *Tonapetyan*, 242 F.3d at 1148.

The record shows significant gaps in Plaintiff's treatment and that she has maintained a level of functioning that has allowed her to work both during the relevant time period and after. *See* AR 24. A claimant's statements may be less credible when treatment is inconsistent with the level of complaints or a claimant is not following treatment prescribed without good reason. *Molina*, 674 F.3d at 1114. "Unexplained, or inadequately explained, failure to seek treatment . . . can cast doubt on the sincerity of [a] claimant's [] testimony." *Fair*, 885 F.2d at 603.

The ALJ also noted that Plaintiff made inconsistent statements during her testimony at the ALJ hearing. At the hearing, Plaintiff alleged her breathing difficulties began at the end of 1996, the summer of 1996, and the beginning of 1996. AR 23, 42, 43, 44. Plaintiff also argued at the hearing that she did not have medical insurance during the relevant time period, (AR 24, 41); however, the record indicates that Plaintiff was insured for at least part of this time period through the Department of Social and Health Services. AR 770. An ALJ may rely on ordinary techniques of credibility evaluation such as a witness's prior inconsistent statements. *Tommasetti*, 533 F.3d at 1039. Thus, the Court does not find the ALJ erred when discounting Mr. Short's credibility because the ALJ properly provided multiple clear and convincing reasons for doing so.

//

//

**B. The ALJ Properly Weighed the Medical Opinion Evidence.**

After considering the medical opinion evidence along with the objective medical evidence in the record, the ALJ found that while Plaintiff had established some medically determinable impairments, she did not meet her burden of showing that these impairments more than mildly limited her ability to perform basic work activities during the relevant time period. AR 25, 28. The ALJ found this determination to be consistent with the opinions of the State agency medical consultants, Jerry Garner, Ph.D., and Gordon, Hale, M.D.. AR 28, 61-6, 68-73.

**a. Legal Standard.**

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating providers, those who actually treat the claimant; (2) examining providers, those who examine but do not treat the claimant; and (3) non-examining providers, those who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id*. at 830-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted

for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

The ALJ may meet the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citation omitted). When rejecting a treating provider's opinion on a psychological impairment, the ALJ must offer more than his or his own conclusions and explain why he or she, as opposed to the provider, is correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### b. Paul E. Emmans, Jr., D.O.

Dr. Emmans is Plaintiff's longtime treating physician. Plaintiff alleges that the ALJ erred by failing to address and ultimately rejecting the opinions of Dr. Emmans. ECF No. 9 at 10. In a letter dated February 3, 1997, Dr. Emmans opined that Plaintiff's severe jaw occlusion impaired her ability to receive adequate nutrition from food because she was incapable of proper mastication. AR 780. Dr. Emmans expresses similar concerns in treatment notes from the relevant time period. AR 326, 727. However, in his letter and notes Dr. Emmans does not mention that these issues caused Plaintiff to have any limiting effects on her ability to perform basic work activities, nor does he prescribe Plaintiff with medication of supplements to address her lack of nutrition.

While the ALJ's opinion does not expressly mention Dr. Emmans by name, it does make reference to his letter and notes, as well as his diagnosis of malnutrition in 2008, well after the expiration of Plaintiff's date last insured. AR 27. With regard to Dr. Emmans opinions, the ALJ noted that no measures were taken to address the lack of nutrition and there was no mention of functional limitations that would impact her ability to perform basic work activities. *Id*. In addition to this, the ALJ also noted that Dr. Emmans did not discuss Plaintiff's methamphetamine use on how it may have been a factor in her weight. *Id*. When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853, 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld").

Thus, the Court finds the ALJ did not err as she did in fact address the opinions of Dr. Emmans and she provided clear and convincing reasons for discounting them.

### C. The ALJ Did Not Err in Finding that Plaintiff Did Not Have a Medically Severe Impairment or Combination of Impairments that Significantly Limited Her Ability to do Basic Work Activities.

The ALJ concluded that while Plaintiff established some medically

determinable impairments, she did not meet her burden of showing that these impairments more than mildly limited her ability to perform basic work activities during the relevant time period. AR 28. Plaintiff argues the ALJ erred by failing to find any severe impairments at step two. ECF No. 9 at 12. She further asserts that she has met her burden to demonstrate that the three medically determinable impairments found by the ALJ caused more than a "slight" abnormality on her ability to perform basic work-activities during the relevant time period. *Id*. The Commissioner argues that the ALJ properly concluded that Plaintiff has no severe impairments or combination of impairments because Plaintiff has not established such impairments by objective medical evidence "consisting of signs, symptoms, and laboratory findings. ECF No. 10 at 11.

### a. Legal Standard.

A claimant bears the burden of establishing disability under the Social Security Act. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step two of the five-step, sequential analysis, the ALJ assesses whether the claimant has a medically severe impairment or combination of impairments that significantly limit his or her ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment or combination of impairments may be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.

1996). The "ability to do basic work activities is defined as "the abilities and

aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). A diagnosis itself

does not equate to a finding of severity. *Edlund*, 253 F.3d at 1159-60 (plaintiff has

the burden of proving this impairment or their symptoms affect her ability to

perform basic work activities); *see also Mcleod v. Astrue,* 640 F.3d 881, 885 (9th

Cir. 2011).

### b. The ALJ did not err in determining that Plaintiff's asthma was not severe during the relevant time period.

The ALJ found that Plaintiff did not provide sufficient evidence to

substantiate her allegations that her pulmonary impairment more than mildly

impacted her ability to perform basic work activities. AR 26. Plaintiff alleges that

the ALJ erred by finding that Plaintiff's asthma during the relevant time period was

not severe. ECF No. 14 at 12; ECF No. 11 at 5. Plaintiff further alleges that her

asthma was in fact severe as it caused her to be hospitalized multiple times due to

limited ability to breathe, resulting in lack of oxygen, wheezing, coughing, chest

pain/tightness, and risk of passing out. *Id.*

The record does not support that Plaintiff's asthma more than minimally

affected her ability to perform basic work activities during the relevant time period.

In 1996, Plaintiff went to the emergency room due to an asthma attack and a chest

x-ray was taken which came back negative for pneumonia and showed that the

lungs were fully expanded. AR 25, 377. In 1998, after an asthma attack that lasted

five days, Plaintiff was diagnosed with bronchitis, but there is no indication that this was anything more than a temporary condition. AR 25, 359-69. Although Plaintiff was prescribed albuterol for her pulmonary condition in 1997, there is no medical evidence in the record that would indicate that her condition had a severe effect on her ability to perform basic work functions during the relevant time period. AR 324. As noted by the ALJ, while there are some significant allegations of pulmonary problems, they did not occur until approximately one year after Plaintiff's date last insured. AR 26, 716.

The Court finds that the ALJ did not err in determining that Plaintiff's asthma was not a severe impairment from August 1995 through December of 1998. *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) (citing 20 C.F.R. § 404.1521(a)(b)) (An impairment is not severe if it does not significantly limit a claimant's ability to perform basic work activities.).

### c. The ALJ did not err in determining that Plaintiff's malocclusion of the jaw was not severe during the relevant time period.

The ALJ found that Plaintiff failed to establish that her jaw abnormalities more than mildly impacted her ability to perform basic work activities. AR 27. Plaintiff argues that her jaw impairment was severe because it broke down her teeth, prevented her from properly chewing her food, causing malnourishment, weight loss, weakness and fatigue. ECF No. 9 at 12; ECF No. 11 at 5.

Although providers during the relevant time period noted that Plaintiff was thin and not getting adequate nutrition due to her inability to properly masticate food, there was no diagnosis of malnutrition nor treatment prescribed to address these issues. 27, 723, 7272, 780. It was not until 2008, well after her insured status had expired, that Plaintiff was first diagnosed with malnutrition secondary to jaw displacement, and even then, her provider did not prescribe any kind of supplement to address the issue. AR 27, 437.

While the record does indicate that there were attempts made by Plaintiff's treating providers to secure surgical and orthodontic treatment for her jaw, amongst the providers' notes and letters, there is no indication that the condition severely impaired Plaintiff's ability to perform basic work activities. 26, 723, 780. The Court also notes that at the time of the ALJ hearing, 18 years after the expiration of the date last insured, Plaintiff still had not secured treatment for her jaw condition even though she had received an offer from Tyson Teeples, D.M.D., M.D., to perform corrective jaw surgery so long as she worked with an orthodontist to ensure that she was surgically ready. AR 27, 787.

Impairments that can be controlled with treatment are not disabling. *See Warre ex rel. E.T. IV v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Additionally, if a claimant's condition is not severe enough to motivate them to follow the prescribed course of treatment this is "powerful evidence"

regarding the extent to which they are limited by the impairment. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Because there is nothing in the record to indicate that her malocclusion of the jaw had a severe impact on her ability to perform basic work functions, in addition to Plaintiff's failure to obtain recommended treatment, the Court finds that the ALJ did not err in determining that Plaintiff's malocclusion of the jaw was not a severe impairment from August 1995 through December of 1998. *Edlund*, 253 F.3d at 1159 (citing 20 C.F.R. § 404.1521(a)(b)) (An impairment is not severe if it does not significantly limit a claimant's ability to perform basic work activities.).

### d. The ALJ did not err in determining that Plaintiff's cervical dysplasia in situ was not severe during the relevant time period.

The ALJ found that the record did not indicate Plaintiff's cervical dysplasia more than mildly impacted her. AR 26. Plaintiff asserts that her cervical dysplasia was a severe impairment because the atypical squamous cells were later revealed to be cervical cancer which required a hysterectomy. ECF No. 9 at 13. In addition to the cancerous cells, Plaintiff claims that she was "bleeding all the time" for years, which exacerbated her other alleged impairments. ECF No. 9 at 12; AR 26,

In May of 1996, Plaintiff complained that she had been bleeding for two years. AR 323. However, in June 1996, her provider noted that previous tests done on Plaintiff did not show anemia. AR 26, 327. And while Plaintiff was diagnosed with dysfunctional uterine bleeding secondary to the progesterone of her Norplant

birth control, AR. 323, when medical providers offered to remove the device,

Plaintiff refused because she did not want to lose the basis of a lawsuit. AR 323.

In June 1998, atypical squamous cells were discovered during a medical evaluation of Plaintiff, however, the cellular changes were noted to be "minor, non-specific, and of undetermined significance." AR 26, 315, 766. After an examination in February 1999, after the expiration of her insured status, Plaintiff was diagnosed with severe dysplasia with a recommendation for a close follow up. AR 317. One year later, in February of 2000, Plaintiff was diagnosed with moderate squamous dysplasia and referred for further treatment. AR 318.

The Court finds that the ALJ did not err in determining that Plaintiff's cervical dysplasia was not a severe impairment from August 1995 through December of 1998. *Edlund*, 253 F.3d at 1159 (citing 20 C.F.R. § 404.1521(a)(b)) (An impairment is not severe if it does not significantly limit a claimant's ability to perform basic work activities.).

### e.  Other alleged impairments.

The ALJ must consider the combined effect of all the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe. *Smolen*, 80 F.3d 1291 (citations omitted). Here, the ALJ found that Plaintiff did not have a severe impairment or combination of impairments that significantly limited her ability to perform basic work-related activities during the

relevant time period. AR 25. Plaintiff asserts that the ALJ erred by failing to find numerous other impairments severe including additional respiratory ailments, attention deficit hyperactivity disorder ("A.D.H.D."), upper dorsal lesions and sternal clavicular inflammation. ECF No. 9 at 12-13.

Impairments that can be controlled with treatment are not disabling. *See Warre ex rel. E.T. IV v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Additionally, if a claimant's condition is not severe enough to motivate them to follow the prescribed course of treatment this is "powerful evidence" regarding the extent to which they are limited by the impairment. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

In 1998, Plaintiff was diagnosed with bronchitis and acute sinusitis and was prescribed treatment for both, but there is no indication that these were anything more than temporary conditions. AR 25, 359-69. Plaintiff has also been diagnosed with A.D.H.D., however, in 2005 her treatment provider noted that Plaintiff was taking Strattera and it was helping her to "retain her brain." AR 65. The notes also indicate that prior to 2005, Plaintiff had not taken medication for her A.D.H.D. for 14 years. *Id*. Plaintiff was seen by her provider in 1995 for pain related to her clavicle and for upper dorsal lesions of the left thorax. AR 328. She was prescribed Daypro to help with the inflammation. *Id*. There are no other complaints of these impairments during the relevant time period.

Plaintiff has not shown that these alleged impairments caused a severe impact on her ability to perform basic work functions, thus Court finds that the ALJ did not err in determining that Plaintiff's alleged impairments were not severe from August 1995 through December of 1998. *Edlund*, 253 F.3d at 1159 (citing 20 C.F.R. § 404.1521(a)(b)) (An impairment is not severe if it does not significantly limit a claimant's ability to perform basic work activities.).

**D. The Court Declines to Determine Plaintiff's Remaining Assertions of Error.**

As the Court has found that the ALJ did not err at step two by determining Plaintiff did not suffer from a severe impairment or combination of impairments during the relevant time period, the Court need not address Plaintiff's additional allegations of error as they would be harmless. Plaintiff's motion for summary judgment is denied along with her request for benefits.

## VIII. CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 9**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 10,** is **GRANTED.**

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 22

3. Judgment shall be entered in favor of Defendant and the file shall be

**CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order,

forward copies to counsel and **close the file**.

**DATED** this 9th day of November, 2018.


_s/Robert H. Whaley_
ROBERT H. WHALEY
Senior United States District Judge